PEOPLE v MARCH

Docket No. 151342. Argued on application for leave to appeal January 13,
2016. Decided June 23, 2016.

Timothy P. March was charged with committing larceny in a
dwelling house, MCL 750.360, and receiving, possessing, or
concealing stolen goods worth more than $200 but less than
$1,000, MCL 750.535(4)(a), for removing fixtures from a home
that had been sold to John Hamood at a sheriff's sale after a
foreclosure proceeding. The home had been owned by defendant's
father, who had given defendant a power of attorney that in-
cluded the right to possess and dispose of his father's real
property. Defendant took the fixtures from the home during the
six-month period in which he could have redeemed the property
under MCL 600.3240(8). Defendant moved to quash the informa-
tion, arguing alternatively that a person could not commit lar-
ceny of a fixture and that he could not have wrongfully taken the
property of another because he retained both legal title and the
right of possession when the fixtures were removed. The court,
Vera Massey Jones, J., initially denied defendant's motion, but,
after the prosecution conceded that defendant had the right to
possess the house during the redemption period, granted defen-
dant's motion on reconsideration and dismissed the charges. The
Court of Appeals, BORRELLO, P.J., and WILDER and STEPHENS, JJ.,
reversed and remanded in an unpublished opinion per curiam,
issued December 4, 2014 (Docket No. 317697), holding that under
*People v Sheldon*, 208 Mich App 331 (1995), an "owner" of
property included not only the titleholder but also any person
whose consent was necessary before property could be taken and
that therefore Hamood was also an owner of the property.
Defendant applied for leave to appeal. The Supreme Court
ordered and heard oral argument under MCR 7.302(H)(1) on
whether to grant defendant's application or take other peremp-
tory action. 497 Mich 1041 (2015).

In a unanimous opinion by Justice MARKMAN, the Supreme
Court *held*:

MCL 750.360 adopted the common law of larceny, which
protects possessory rights. Because only defendant held posses-

sory rights in the fixtures at the time he removed them, and Hamood held no such rights, defendant could not have committed larceny as charged. Absent a proper larceny charge, the fixtures were necessarily not stolen goods, and the charge of receiving or possessing stolen goods therefore failed as well. The Court of Appeals judgment was reversed, and the trial court order dismissing the charges was reinstated.

1. Defendant was charged with larceny under MCL 750.360, which provides in part that any person who commits the crime of larceny by stealing in any dwelling house shall be guilty of a felony. The general crime of larceny is established in MCL 750.356, which provides in part that a person who commits larceny by stealing certain property of another, including money, goods, or chattels, is guilty of a crime. Michigan has no statutory definition of larceny, and all the statutes addressing larceny use the term's common-law definition. That definition can be parsed into the following elements: (a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property. To these elements, MCL 750.360 added element (f): the taking occurring within the confines of the building.

2. At common law, "property of another" for purposes of larceny referred to property that someone other than the defendant had the right to possess as against the defendant at the time of the taking. While the Michigan Supreme Court had not yet expressly defined "property of another" for purposes of the larceny statutes, its caselaw as well as caselaw from the Court of Appeals comported with the common-law proposition that property constitutes the "property of another" when someone holds the right to possess it as against the defendant at the time of the taking. To determine whether another held such rightful possession, courts must examine the respective rights of all relevant individuals to the property and decide whether any of them held a right to possess the property as against the defendant at the time of the taking. This assessment requires courts to consult the statutes, contracts, caselaw, and other sources that give rise to the individuals' rights and define the relationship between those rights.

3. Defendant could not have committed larceny by taking the fixtures because, given that defendant had the right to possess the fixtures at the time of the alleged larceny, they did not constitute the "property of another." "Possession" is defined as the fact of having or holding in one's power the exercise of dominion over property, the right under which one may exercise control

over something to the exclusion of others, and the continuing exercise of a claim to the exclusive use of a material object. In general, possession is either actual or constructive. Fixtures intentionally annexed to real property become part of the mortgage security, and, upon foreclosure sale, title to them passes with the realty. Therefore, whatever rights Hamood had in the fixtures arose from his foreclosure purchase. A foreclosure-sale purchaser receives a deed at purchase that vests title at the end of the six-month redemption period if the mortgagor fails to redeem the property by paying the amount of the successful bid, interest on that amount, and various fees. The vesting of title confers on the purchaser those rights that existed at the time that the mortgage subject to foreclosure was executed as well as those the mortgagor held at any time thereafter under the relation-back doctrine. In these circumstances, because the purchaser is deemed to hold title retroactively, he or she can bring civil actions for damages done to the property during the redemption period; such actions may also be brought under MCL 600.3278. However, this interest is not a possessory right, let alone one that permits the purchaser to exclude the mortgagor from possession. Only after the mortgagor fails to redeem does the purchaser's interest ripen into a legal title and endow the purchaser with the right of possession. Hamood, as the foreclosure-sale purchaser, thus held equitable title to the property during the redemption period, which gave him no possessory rights. Defendant, by contrast, held the sole right to possess the property. Therefore, defendant could not, by taking the property, have trespassed upon the "property of another" because no one else had the right to possess it at that time. Consequently, defendant's actions did not constitute a trespassory taking of the "property of another" and did not constitute larceny under MCL 750.360. And because the property was not stolen, defendant did not receive, possess, or conceal stolen goods under MCL 750.535(4)(a).

4. The Court of Appeals erred by assuming that Hamood was the "owner" of the fixtures for purposes of larceny and thus that the fixtures were the "property of another" as against defendant by virtue of Hamood's supposed right to consent to their removal. An individual is not considered to "own" property because he or she may consent to its taking; rather, particular interests encompass the right to consent. Consent is an attribute or function of some property interests that is derived from a right to control the property, which in turn is an attribute or function of the right to possession of the property. The right to consent could not serve as a proxy for the right to possession because neither of the sources of legal authority on which the court relied gives rise to the right

to possession. MCL 600.3278 does not endow the purchaser with a possessory right, nor does the equitable title held by Hamood.

Court of Appeals judgment reversed; trial court order dismissing the criminal charges against defendant reinstated.

1. LARCENY — ELEMENTS.

MCL 750.360 provides that any person who commits the crime of larceny by stealing in certain buildings is guilty of a felony; the elements of the crime are (1) a trespassory taking and (2) the carrying away (3) of the personal property (4) of another (5) with intent to steal that property and (6) the taking occurring within the confines of the building.

2. LARCENY — DEFINITIONS — PROPERTY OF ANOTHER.

For purposes of larceny, the phrase "property of another" is property that someone other than the defendant had the right to possess as against the defendant at the time of the taking; to determine whether another held such rightful possession, courts must examine the respective rights of all relevant individuals to the property and consult the statutes, contracts, caselaw, and other sources that give rise to the individuals' rights and define the relationship between those rights.

3. LARCENY — FIXTURES ANNEXED TO REAL PROPERTY — FORECLOSED PROPER-
    TIES — REDEMPTION PERIOD — RIGHT OF POSSESSION — MORTGAGORS.

A mortgagor who holds legal title to a foreclosed property that was subsequently purchased at a sheriff's sale has the right to possess the property and its fixtures to the exclusion of the purchaser during the statutory redemption period; the removal of fixtures from the property by the mortgagor during this period does not constitute larceny (MCL 750.360; MCL 600.3236).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Kym Worthy*, Prosecuting Attorney, *Jason W. Williams*, Chief of Research, Training, and Appeals, and *David A. McCreedy*, Lead Appellate Attorney, for the people.

*M. Michael Koroi* for defendant.

MARKMAN, J. We consider here whether a homeowner, or another person rightfully possessing a home,

commits criminal larceny by removing fixtures from the home after it has been foreclosed on and sold at a sheriff's sale, but before the statutory redemption period has expired. The trial court concluded that such removal did not constitute larceny because defendant was in possession of the home and fixtures at the time. The Court of Appeals disagreed, finding that the foreclosure-sale purchaser's equitable interest in the home signified that the fixtures constituted the "property of another" at the time of their removal and that defendant therefore required the purchaser's consent before these could be taken.

We conclude that our larceny law prohibits the wrongful dispossession of property, protecting an individual's possessory interests from a wrongful taking. Because defendant held the exclusive possessory right in the home, including its fixtures, at the time of the alleged larceny, he could not have wrongfully dispossessed anyone else, including the foreclosure-sale purchaser, of rightful possession of that property. Accordingly, he could not have committed larceny of the fixtures. We therefore reverse the judgment of the Court of Appeals and reinstate the trial court's dismissal of the criminal charges.[1]

---

[1] Despite the failure of the larceny charge in this case, it is possible that defendant's actions might properly give rise to alternative criminal offenses. The prosecutor here has indicated a belief that defendant may be guilty of at least two other offenses: embezzlement, MCL 750.181(1), and malicious destruction of property, MCL 750.380. We do not here opine on the applicability of either of these, or any other criminal offense, to defendant's conduct. Additionally, a foreclosure-sale purchaser such as Hamood is not without recourse, as he has various civil remedies. One is MCL 600.3278(1), which provides a foreclosure-sale purchaser with the right to pursue damages against a mortgagor who causes injury to the property during the redemption period. Another is the procedure set forth in MCL 600.3237 and MCL 600.3238, which enables the purchaser to inspect the property and institute summary

I. FACTS AND HISTORY

Defendant's father owned a home in Westland, Michigan, which secured a mortgage loan. In July 2011, he granted defendant a power of attorney that gave defendant the right "to possess, recover, manage, hold, control, develop, subdivide, partition, mortgage, lease or otherwise deal with any real property belonging" to his father. Additionally, defendant could "dispose of any real property" or personal property. Around this time, defendant's father also took up residence at an assisted-living home. Subsequently, the mortgage loan on the Westland home fell into default. The mortgagee eventually foreclosed, and on August 9, 2012, the home was sold at a sheriff's sale to John Hamood for $33,425.80.[2] On the sale date, a six-month redemption period commenced under MCL 600.3240(8), during which time defendant and his father could void the purchaser's deed by tendering full payment of the purchase price to Hamood. The property went unredeemed.

Hamood inspected the home on February 10, 2013, the day after the redemption period expired. Inside, he noticed various items missing, including kitchen cabinets, the kitchen countertop, a furnace, duct work,

_____

proceedings for possession under MCL 600.5701 *et seq.* if the person then in possession is damaging the property. Moreover, the statute defines "damage" to include "[m]issing or destroyed structural aspects or fixtures." MCL 600.3238(11)(d). We also emphasize that the analysis in larceny cases such as the instant one relies heavily on the statutory or contractual framework establishing the individuals' respective rights in the property. The conclusion reached here is consequently limited to circumstances in which the mortgagor retains his possessory rights in the property during the redemption period and does not, for instance, contract them away.

[2] The affidavit of the foreclosure-sale purchaser indicates that Vonelle Ventures, LLC was the actual purchaser. It appears that Hamood operates and owns Vonelle.

interior doors, a hot water tank, and an exterior air conditioner. He contacted the police the same day, informing them of his findings, and they initiated an investigation that resulted in a search of defendant's home approximately two weeks later. The search uncovered many of the missing items, along with other fixtures that had apparently been removed.

Defendant was arrested and charged in a criminal information with two counts: committing larceny in a dwelling house, MCL 750.360, "by stealing counter tops, sink, furnace, doors, hot water heater, grab bars, [and] cabinets," and receiving, possessing, or concealing stolen goods worth more than $200 but less than $1,000, MCL 750.535(4)(a). In June 2013, defendant filed his first motion to quash the information, setting forth alternative arguments. First, he argued that fixtures were not the proper subject of larceny; that is, that one could not commit larceny of a fixture. Second, he argued that he could not have wrongfully taken property of another because he retained legal title and the right of possession throughout the redemption period, during which time the removal of the fixtures had occurred.[3] The latter argument was considered by the trial court, which denied defendant's motion, as well as a subsequent amended motion, on the basis that defendant had failed to prove a right to possession. Upon a motion for reconsideration, however, the prosecutor conceded that defendant had the right to possess the house during the redemption period. Consequently, the trial court granted defendant's motion for reconsideration and dismissed the charges.

---

[3] In a third argument, defendant contended that the record lacked any evidence that he had a felonious intent. The courts below did not address this contention, and we likewise decline to opine on defendant's intent, given that he prevails here regardless of his intent.

The Court of Appeals reversed, focusing on *People v Sheldon*, 208 Mich App 331, 333-334; 527 NW2d 76 (1995), for the proposition that the "owner" of property included not only the titleholder of that property, but also "any other person whose consent was necessary before the property could be taken." *Id*. (quotation marks and citation omitted). The Court determined that Hamood was an "owner" of the fixtures because his consent was necessary before these could be taken by defendant. *People v March*, unpublished opinion per curiam of the Court of Appeals, issued December 4, 2014 (Docket No. 317697), p 4. The Court inferred this right to "consent" from two sources. First, according to our caselaw, Hamood held equitable title to the property during the redemption period. Second, MCL 600.3278(1) provides purchasers such as Hamood a right of action against mortgagors who damage the foreclosed property during the redemption period. In light of these two sources of law, the Court concluded that "the items that defendant allegedly removed from the home were at least partially the 'property of another' " and therefore that "the trial court abused its discretion in dismissing the larceny and possession of stolen property charges against defendant . . . ." *Id*. The Court also held that fixtures are proper subjects of larceny because once severed they become personal property. *Id*. at 5. Accordingly, the Court reversed the trial court and remanded to the trial court for further proceedings.

We heard oral argument on the application under MCR 7.302(H)(1) on the following two questions:

> (1) whether the removal of fixtures by a mortgagor from the mortgaged premises after a sheriff's sale but prior to the expiration of the redemption period may subject the mortgagor to criminal liability for larceny; and (2) whether fixtures taken from real property may be the

subject of larceny under MCL 750.356(1). [*People v March*, 497 Mich 1041 (2015).]

## II. STANDARD OF REVIEW

A trial court's decision to quash an information is reviewed for an abuse of discretion. *People v Dowdy*, 489 Mich 373, 379; 802 NW2d 239 (2011). An abuse of discretion occurs when the trial court "chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). However, "[t]his Court reviews de novo questions of statutory interpretation." *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008). Thus, "[t]o the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010), citing *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001).

## III. ANALYSIS

We begin as always by examining the language of the relevant statute, MCL 750.360. As will become clear below, this language leads us in turn to the common-law background of larceny, which we then must also examine.

### A. INTERPRETATION

The resolution of this case depends on the proper interpretation of MCL 750.360, which criminalizes larceny in a building. "The Court's responsibility in interpreting a statute is to determine and give effect to the Legislature's intent." *People v Lowe*, 484 Mich 718, 721; 773 NW2d 1 (2009). The statute is the

touchstone for determining the Legislature's intent, for "we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted and the statute must be enforced as written." *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). We must give "plain meaning to the words actually used" in a statute. *People v Williams*, 491 Mich 164, 175; 814 NW2d 270 (2012). Accordingly, when a statute fails to define a term, "we presume that the Legislature intended for the words to have their ordinary meaning." *People v Hardy*, 494 Mich 430, 440; 835 NW2d 340 (2013); see also MCL 8.3a.

When, however, an undefined term is one that has "a settled, definite, and well known meaning at common law," we will assume that the Legislature adopted that meaning "unless a contrary intent is plainly shown." *People v Covelesky*, 217 Mich 90, 100; 185 NW 770 (1921), superseded by statute on other grounds as recognized by *People v Smith-Anthony*, 494 Mich 669, 697 n 11; 837 NW2d 415 (2013); see also *People v Young*, 418 Mich 1, 13; 340 NW2d 805 (1983). "[T]echnical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a. Thus, common-law terms adopted in statutes will be applied in the same manner in which they were applied at the time they were codified. *People v Riddle*, 467 Mich 116, 125-126; 649 NW2d 30 (2002).

### B. MCL 750.360

Our analysis then begins with the language of MCL 750.360, the statute under which defendant was charged with larceny:

> Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony.

The statute leaves larceny undefined, so we next turn to the so-called "simple larceny" statute, MCL 750.356, which implicates the "crime of larceny" referred to in MCL 750.360. *People v Adams*, 128 Mich App 25, 31-32; 339 NW2d 687 (1983) (labeling the statute as "simple larceny"). MCL 750.356 establishes the general crime of larceny:

> (1) A person who commits larceny by stealing any of the following property of another person is guilty of a crime as provided in this section:
>
> (a) Money, goods, or chattels.
>
> (b) A bank note, bank bill, bond, promissory note, due bill, bill of exchange or other bill, draft, order, or certificate.
>
> (c) A book of accounts for or concerning money or goods due, to become due, or to be delivered.
>
> (d) A deed or writing containing a conveyance of land or other valuable contract in force.
>
> (e) A receipt, release, or defeasance.
>
> (f) A writ, process, or public record.
>
> (g) Scrap metal.

As this Court observed in addressing a predecessor to MCL 750.356, "[w]e have no statutory definition of larceny, and all our statutes use it in its common law sense." *Morrissey v People*, 11 Mich 327, 336 (1863). More recently, the Court of Appeals reiterated this proposition: "There is no statutory definition of larceny in Michigan and all statutes use the term in its

common-law sense." *People v Anderson*, 7 Mich App 513, 516; 152 NW2d 40 (1967); see also Saltzman, Michigan Criminal Law: Definitions of Offenses (2d ed), § 7-2(a), p 528 ("Since 'larceny' is not defined by the statute, Michigan law begins with the common law definition."). This observation remains true today, as the larceny statute has retained the same general formulation since it was first enacted in 1838 shortly after statehood. 1838 RS, part 4, tit I, ch 4, § 17 ("Every person who shall commit the offence of larceny, by stealing of the property of another[,] any money, goods or chattels," shall be punished.).[4] Indeed, we have continued without interruption to interpret larceny statutes in light of their common-law heritage. See, e.g., *Smith-Anthony*, 494 Mich at 676-679.

---

[4] Subsequent statutes mirror this definition, with only immaterial distinctions in phrasing. See, e.g., 1846 RS, ch 154, § 18 ("Every person who shall commit the offence of larceny, by stealing of the property of another, any money, goods or chattels . . . ."); 1882 CL, ch 318, § 9140 (same but for spelling of "offense"); 1897 CL, ch 320, § 18 (same); 1915 CL, ch 257, § 17 ("Every person who shall commit the offense of larceny by stealing from the person of another . . . ."); MCL 750.356 (1948) ("Any person who shall commit the offense of larceny, by stealing of the property of another, any money, goods or chattels . . . ."); MCL 750.356 (1970) ("Any person who shall commit the offense of larceny, by stealing, of the property of another, any money, goods or chattels . . . ."). Indeed, the current statute reflects even earlier statutes defining larceny in the Northwest Territory. In 1795, the territorial government adopted Pennsylvania's larceny statute, which punished those who had "feloniously stolen any money, goods or chattels . . . ." A Law for the Trial and Punishment of Larceny, June 5, 1795, Laws of the Territory of the United States North-West of the Ohio (1796), p 41. After Michigan became an independent territory, it enacted a statute in 1818 proscribing larceny: "if any person shall steal any money, goods, or chattels, . . . [that person] shall be fined . . . or whipped . . . ." 2 Territorial Laws, Act of July 27, 1818, § 1, p 138. Thus, the current statute tracks the original larceny enactments dating back two centuries, all of which left larceny undefined.

This Court has relied on that common law to establish the general elements of simple larceny: "[A]t common law simple larceny was defined as 'the felonious taking, and carrying away, of the personal goods of another.' " *People v Randolph*, 466 Mich 532, 542-543; 648 NW2d 164 (2002), quoting 4 Blackstone, Commentaries on the Laws of England, p *229.[5] We have also described larceny as the "unlawful taking of the personal property of another with the felonious intent to deprive the owner of it." *People v Johnson*, 81 Mich 573, 576; 45 NW 1119 (1890).

These articulations of the common law can be parsed in turn into the following elements: (a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property.[6] To these elements, MCL 750.360, the statute addressing larceny in a building, adds one further element: (f) "the taking . . . occurr[ing] within the confines of the building." *Randolph*, 466 Mich at 552 n 25.

---

[5] *Randolph* was superseded by statute on other grounds as recognized by *Smith-Anthony*, 494 Mich at 686 n 50.

[6] This definition mirrors those found in numerous treatises. In one leading work, larceny is defined as "the (1) trespassory (2) taking and (3) carrying away of the (4) personal property (5) of another (6) with intent to steal it." 3 LaFave, Substantive Criminal Law (2d ed), § 19.2, p 62; see also Saltzman, § 7-2(a), pp 528-529. Sir Edward Coke stated that "[l]arceny, by the common law, is the felonious and fraudulent taking and carrying away by any man or woman, of the meere personall goods of another . . . ." 3 Coke, Third Part of the Institutes of the Laws of England (1797), p 107. See also 1 Hale, History of the Pleas of the Crown (1800), p 503 (using Coke's definition); 1 Hawkins, Treatise of the Pleas of the Crown (1716), p 89. An even older source defined the offense as "the treacherous taking of a corporeal movable thing of another, against the will of him to whom it belongs, by evil acquisition of possession or of the use." Horn, The Mirror of Justices (1895 Selden Society ed), p 25. See also 3 Torcia, Wharton's Criminal Law (15th ed), p 347 ("At common law, larceny is the trespassory taking and carrying away of the personal property of another with the intent permanently to deprive.").

Therefore, the prosecutor must prove each of these six elements in order to obtain a conviction.[7]

The dispute in the present case centers on element (d), whether the fixtures defendant took constituted the "property of another."[8] Accordingly, to resolve this case, we must determine the meaning of the term "property of another," specifically, the nature of the interest protected by larceny—that is, whether "property of another" means property in which "another" has a proprietary, possessory, or some other type of property interest. The parties disagree as to whether Hamood's interest during the redemption period was sufficient to transform the fixtures into the "property of another" with respect to defendant. Our six-element definition of larceny does not, on its face, yield a

---

[7] The Court of Appeals has formulated an essentially identical test for larceny:

> (1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or personal property of another, (5) the taking must be without the consent and against the will of the owner. [*Anderson*, 7 Mich App at 513, 516.]

While this phrasing contains the term "owner," as we will explain, it is used here with imprecision, and in the broader context of the development of the common law of larceny in Michigan, it should not be read to suggest that the law of larceny protects only those who hold title or an equitable interest in property. Rather, the law of larceny focuses on the wrongful dispossession of property; that is, the law of larceny protects possessory rather than proprietary interests. Thus, to be precise, we employ the more traditional phrasings referring to "property of another" and "trespassory" takings, rather than the words "owner" and "consent."

[8] For purposes of this appeal, the parties do not dispute that defendant removed and carried away the property in controversy or that the alleged larceny occurred in a "building" for purposes of MCL 750.360. Nor do they dispute the property's characterization as "fixtures," at least before their severance from the house.

definite resolution of this issue because it does not address the nature of the interest that "another" must have in the property. We must then turn to larceny's common-law background to explain the classes of interests that constitute the "property of another" protected by larceny laws against "trespassory" takings.

### C. "PROPERTY OF ANOTHER" AT COMMON LAW

At common law, "property of another" referred to property that "another" had the right to possess as against the defendant at the time of the taking. In other words, if at the time of the taking someone other than the defendant had the right to possess the property to the exclusion of the defendant, then it constituted the "property of another." It followed that if the defendant had the right to possess the property as against the complainant at the time of the taking, no larceny could occur.

The focus on protection of possessory rights is first reflected in the prohibition of *trespassory* takings, which forms the core of larceny's common-law roots. As noted, common-law larceny was defined as the "unlawful taking of the personal property of another with the felonious intent to deprive the owner of it." *Johnson*, 81 Mich at 576. It was the unlawful, or trespassory, "taking" that defined the fundamental nature of the crime: "[t]he principal factor which limited the scope of larceny was the requirement that the thief must take it from the victim's possession; larceny requires a 'trespass in the taking,' as the matter is often stated." 3 LaFave, Substantive Criminal Law (2d ed), § 19.1(a), p 57. Or as another scholar noted, the "change of possession has from the earliest times been essential to larceny; so that there can be no larceny where there is no trespass." 3 Holdsworth, A History of English Law

(1923), p 361 (citations omitted); see also Hall, *Theft, Law and Society* (2d ed, 1952), p 6 ("Trespass as an essential element of larceny simply meant taking a chattel from one who had possession of it.").

In order for the taking to be trespassory, the goods taken had to be the "property of another." An early-nineteenth-century treatise expressed this idea by emphasizing the victim's possessory rights: "the goods, when taken, must be either actually or constructively in the possession of another . . . ." 1 Robinson, Introduction of a Justice of the Peace to the Court of Quarter Sessions of the Peace (1836), p 107. Another nineteenth-century treatise expounded on this point, distinguishing proprietary rights and possessory rights and asserting that the latter were protected from criminal misappropriation by the crime of larceny: "the misappropriation of property operates not by transferring proprietary rights, but by transferring the power of actual enjoyment of those rights, *i.e.* by dealing with the possession or custody of the thing to which they are attached . . . ." 3 Stephen, History of the Criminal Law of England (1883), at 124.[9] Simply put, "larceny is committed by a wrongful taking from one who has rightful possession." *State v Jackson*, 251 Iowa 537, 542; 101 NW2d 731 (Iowa, 1960); see also 2 Pollock & Maitland, History of English Law Before the

---

[9] We use Stephen's terminology in this opinion to distinguish between "proprietary" and "possessory" rights. We will define the latter term below, but here we take the opportunity to note that we use proprietary rights in distinction to possessory rights to mean all formal interests in property, such as legal title, equitable interests, or future interests. See *Black's Law Dictionary* (10th ed) (defining "proprietary" as, among other things, "[o]f, relating to, or holding as property"). While the right to possession may well accompany some of these interests, such a right may be independent of them as well, arising from other sources, such as a bailment. And at times, these proprietary rights may not endow the person who holds them with the immediate right to possess the property.

Time of Edward I (2d ed, 1898), p 498 ("The crime involves a violation of possession . . . ."). Thus, larceny at common law protected principally against wrongful *dispossessions* of personal property.[10]

What makes the dispossession wrongful is that the person from whom the property is taken holds the right to possess it *as against* the defendant at the time of the taking. This aspect of the definition of "property of another" is reflected by two rules developed by the courts: (a) an individual in the rightful possession of property could not steal it; and (b) anyone in the rightful possession could be viewed as the "owner" for purposes of larceny.

The first rule is that a person in the rightful possession of property cannot steal it. See LaFave, §§ 19.1 and 19.2. "[Larceny] is an offence *against* a possessor and therefore can never be committed *by* a possessor." Pollock & Maitland, p 498 (emphasis added). Thus, for example, "where a man has goods in his possession

---

[10] The common law's protection of possession is explained by a similar rationale to that justifying larceny as a criminal offense: to prevent breaches of the peace. As the United States Supreme Court has observed:

In the 13th century, larceny was limited to trespassory taking: a thief committed larceny only if he feloniously "took and carried away" another's personal property *from his possession*. The goal was more to prevent breaches of the peace than losses of property, and violence was more likely when property was taken from the owner's actual possession. [*Bell v United States*, 462 US 356, 358; 103 S Ct 2398; 76 L Ed 2d 638 (1983).]

A substantial body of literature supports the notion that the law of larceny was intended to prevent breaches of the peace. Green, *13 Ways to Steal a Bicycle* (Cambridge: Harvard University Press, 2012), p 77; Steel, *Taking Possession: The Defining Element of Theft?*, 32 Melb U L Rev 1030, 1038-1039 (2008); Douglass, *Rethinking Theft Crimes in Virginia*, 38 U Rich L Rev 13, 17 (2003); Fletcher, *The Metamorphosis of Larceny*, 89 Harv L Rev 496, 497-498 (1976).

by reason of a bailment, he cannot take them feloniously, being in possession . . . ." *Carrier's Case*, YB 13 Edw IV, f 9, pl 5 (1473); see also *Fitch v State*, 135 Fla 361, 366; 185 So 435 (1938); Hall, pp 6-7; Fletcher, *The Metamorphosis of Larceny*, 89 Harv L Rev 469, 481-482 (1976). Even if the bailee absconded with the property during the bailment, that taking would not constitute larceny under the common law; because the bailee had acquired and maintained rightful possession of the property at the time of the taking, the property was not that "of another," and the taking therefore did not trespass upon another's right to possess the property as against the bailee. See *Metamorphosis of Larceny*, 89 Harv L Rev at 475 (explaining that, under common-law larceny, a bailee, or anyone in rightful possession of property, was endowed with a sort of "possessorial immunity" such that "those who acquired possession over chattels were not subject to criminal liability for subsequent misappropriation").

The second common-law rule is related to the first: one in the rightful possession of property, such as a bailee, could be considered the "owner" as against anyone else who took the goods from his possession. Because, as Lord Blackstone explained, bailees had "immediate possession," they were "entitled to an action . . . on account of [their] immediate possession . . . ." Blackstone, p *396; see also Matthews, *Digest of the Law Relating to Offences Punishable by Indictment, and by Information in the Crown Office* (1833), pp 300-301 (noting that the "bailee, pawnee, lessee for years, carrier, or the like" could be characterized as the owner in a larceny indictment). As one scholar has noted, either the bailor or bailee could be considered the "owner" for purposes of larceny because the "property is still in" the true owner, but the bailee "hath the possession . . . and hath the property against

all the world but" the true owner. 1 Hale, History of the Pleas of the Crown (1800), p 512. With respect to the thief then, the stolen goods were the "property of another," because both the bailor and bailee held possessory rights as against the thief. Coke, pp 107-108; Robinson, pp 119-120. Further, because the bailee held rightful possession, even the true owner could be charged with larceny of his own goods if these were taken from the bailee during the bailment. Blackstone, p *231; Hale, p 513. Lord Coke linked this conclusion to the term property "of another": the owner could "commit larceny" of goods bailed or loaned to another "by the felonious taking and carrying them away, and in judgement of law he is said in this case to take the goods of another" because the "bailee hath [a right to possession], or a speciall property." Coke, p 110; see also LaFave, § 19.4(c), p 85 ("Sometimes the property which *A* owns is in the lawful possession of *B*, who has a pledge or lien interest . . . . From *A*'s viewpoint such property is considered the 'property of another for purposes of larceny . . . .' ").

Taken together, these rules communicate that "property of another" requires that someone other than the defendant holds the right to possess the property to the exclusion of the defendant at the time of the taking. To determine whether "another" holds such a possessory right, courts employing the common law have engaged in an examination and comparison of the property rights held by the defendant and other relevant parties when the taking occurred, looking to various rights-defining sources such as statutes to inform that assessment. See, e.g., *People v Zinke*, 76 NY2d 8, 10-14; 556 NYS2d 11; 555 NE2d 263 (1990) (noting that the legislature codified the common-law definition of "property of another" and relying on statutes to determine relevant property rights); *Murphy v State*, 453 NE2d 219, 221

(Ind, 1983) ("The rights to be examined in determining whether or not a theft has been committed are the rights of the person in possession of the property and the rights of the person who took such possession from him."); see also 50 Am Jur 2d, Larceny, § 25, p 36 ("[T]he key to answering the question of which person has the greater right to possession of the property is who, *at the time of commission of the offense*, had the greater right to possession of the property.") (emphasis added); Peterson, *Georgia Law of Theft*, 12 Mercer L Rev 308, 308 (1961) (noting that because the taking was out of another's possession, "it became important to determine in whom lay rightful possession").

### D. MICHIGAN LAW

Our state's caselaw reflects the common-law notion that the "property of another" requirement for larceny contemplates protecting the possessory rights of "another" who at the time of the taking holds a right to possess the property as against the defendant. As a result, a person in rightful possession of the property at the time of the taking cannot commit larceny by taking that property.

This Court has made clear that establishing larceny as a crime was intended to protect possession. One of the ways we have done so is by recognizing that the law of larceny prohibits trespassory takings. As noted above, "trespass" at common law "simply meant taking a chattel from one who had possession of it." Hall, p 6. If there is no trespass because the defendant initially received possession lawfully, then larceny has not occurred. For this reason, in *People v Taugher*, 102 Mich 598, 601; 61 NW 66 (1894), this Court overturned a larceny conviction in which the defendant's "possession was lawful until the [owner's] demand" for return

of the property. In a similar vein, this Court has recognized that "larceny was not the proper charge at common law if a person lawfully acquired possession of property belonging to another and subsequently converted it to his own use." *People v Christenson*, 412 Mich 81, 86 n 3; 312 NW2d 618 (1981). This is because if, when the taking occurred, the defendant had a right to possess the property, it was not the "property of another" in the relevant sense at the necessary time. Thus, our caselaw, as with the common law, prohibits trespassory takings that deprive an individual of rightful possession of property. Those, on the other hand, who come into the possession of property lawfully have not committed larceny because the taking and possession were not wrongful at their inception.

More directly, we have declared that possession, and not title ownership, is the determinative requirement in larceny crimes. In *Christenson*, 412 Mich at 87, we observed, "As with common-law larceny, larceny by conversion [MCL 750.362] is a crime against possession and not against title . . . ." This statement not only communicates that the law of larceny protects an individual's possessory rights, but further supports the proposition that property is "of another" when someone other than the defendant has a right to possess that property as against the defendant, regardless of whether that person possesses title to it. 50 Am Jur 2d, Larceny, § 18, p 29 (citing *Christenson* in support of this specific rule); Tiffany, A Treatise on the Criminal Law of the State of Michigan (5th ed, 1900), p 915 ("The person alleged in the indictment to be the owner must, also, have, at the time of the taking, either the actual or constructive possession of the goods.").[11]

---

[11] Other cases involving related crimes give further support to this interpretation. See, e.g., *People v Gould*, 384 Mich 71, 80; 179 NW2d 617

The Court of Appeals has expressed the same idea, although sometimes attended by the problematic term "owner," suggesting wrongly that only proprietary rights are protected. Despite this, the Court has accurately explained the rightful-possession requirement. As one opinion stated, "For purposes of larceny, the 'owner' is the person who has rightful possession and control of the property." *People v Pohl*, 202 Mich App 203, 205; 507 NW2d 819 (1993), remanded for resentencing on other grounds 445 Mich 918 (1994). One particularly thoughtful decision in this regard is *People v Hatch*, 156 Mich App 265; 401 NW2d 344 (1986), in which an owner left his boat for repairs at a marina, from where it was later stolen. *Id.* at 266. At trial, a dispute occurred concerning the evidence necessary to prove that the taking was contrary to the owner's will, with the trial court granting a motion to strike the boat's owner as a res gestae witness, i.e., one who was "witness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense." *Id.* at 266-267. The trial court granted the motion to strike, and the Court of Appeals affirmed, explaining that the "owner" for purposes of the alleged larceny was the marina manager who was in rightful possession of the boat at the time it was taken. *Id.* at 267-268. This result reflects the common law of larceny, which pro-

(1970) (noting that it was sufficient under MCL 750.357, the statute addressing larceny from a person, for the taking to have been from the victim's possession); *Durand v People*, 47 Mich 332, 334; 11 NW 184 (1882) (noting, in a case of assault with intent to rob, that "[a]s against a wrong-doer an actual possession or custody of the goods would be sufficient"); *People v Hooks*, 139 Mich App 92, 96; 360 NW2d 191 (1984) (citing *Durand* to support the possession requirement in a criminal charge for receiving stolen property).

tected persons rightfully possessing property, whether they owned the property or not.

Further supporting this conclusion is this Court's decision in *People v Jacks*, 76 Mich 218; 42 NW 1134 (1889), which *Hatch* cited. In *Jacks*, we held that "the fact of non-consent to the taking may . . . be proved by any other person having knowledge of the facts as well as by the owner or *the person having control of the property at the time* . . . ." *Id.* at 221 (emphasis added). This suggests that larceny can occur by the dispossession of a rightful possessor of the property, even if that person is not the title owner. It is thus reasonably well established that the rightful possessor of property can constitute its "owner" for purposes of larceny. Or, more accurately, the property is "of another" if another rightfully possesses it.[12]

Our caselaw has also recognized that in order to constitute "property of another," "another" must hold rightful possession as against the defendant at the time of the taking. In *People v Long*, 50 Mich 249; 15 NW 105 (1883), for instance, the defendant's buggy was held by a man named William Gilbert pursuant to a lien. *Id.* at 250. This Court held that the defendant, although the true owner, was guilty of larceny where he had "secretly removed" the buggy from Gilbert's possession. *Id.* "Gilbert had a lien upon the buggy . . . and was *rightfully in possession.*" *Id.* at 251 (emphasis added). Accordingly, this Court upheld the larceny conviction. *Id.*

---

[12] *Sheldon*, 208 Mich App at 334 ("Larceny is not limited to taking property away from the person who holds title to that property, but also includes taking property from a person who has rightful possession and control of the property."); *Hooks*, 139 Mich App at 96 ("[I]t is well-settled that a larceny can be committed by a wrongful taking from a person in actual possession or custody of the goods taken; ownership need not be show[n].").

By noting that Gilbert "rightfully" possessed the buggy, we recognized that the buggy was the "property of another," with respect to the defendant, even though the defendant was the title owner. In other words, Gilbert's rightful possession by virtue of the lien gave him the right to possess the buggy as against the defendant. And the defendant, regardless of any rights that might have inhered in him as title owner, lacked the right to possess the buggy as against Gilbert at the time of the taking. Therefore, by taking the buggy, the defendant took the "property of another" and was guilty of larceny.

The same reasoning runs through Court of Appeals cases, the most prominent of which is *People v Sheldon*, 208 Mich App 331, relied on by the Court of Appeals in the instant case. In *Sheldon*, as in *Long*, the larcenist owned the property he stole, which consisted of two impounded Cadillacs held at a car lot. *Id.* at 333-334. He was charged with two counts of simple larceny, MCL 750.356, which the trial court quashed because the lot did not own the cars. *Id.* The Court of Appeals disagreed, citing *Hatch*, 156 Mich App at 267, and Model Criminal Jury Instruction 22.2 to establish that the "owner" for purposes of larceny was not necessarily the title owner. Instead, it noted that the owner could be the " 'actual owner' " or " 'any other person whose consent was necessary before the property could be taken.' " *Sheldon*, 208 Mich App at 334-335, quoting M Crim JI 22.2. The Court did not engage in an analysis of the lot's right to consent in the abstract, but grounded its analysis in whether the lot had a right to possess the cars. *Id.* at 334-337. Specifically, the Court stated that the relevant question was "whether the wrecker service enjoyed a *right of possession* sufficient to support a larceny charge at the time the vehicles were removed from the wrecker service's

possession." *Id.* at 334 (emphasis added). To determine this, the Court examined the legal authority for the lot's possession of the two cars. As to one of these, the court determined that the owner's right to possess the car was conditioned on the payment of certain impoundment fees. *Id.* at 336. Therefore, the defendant "did not have the right to remove the vehicle . . . until such time as he paid the impoundment fees or posted a bond," and unauthorized removal could constitute larceny. *Id.* Concerning the second car, there was no evidence that it had been lawfully impounded, and the larceny charge in connection with its taking was quashed.

Accordingly, *Sheldon,* as with *Long,* comports with the common-law proposition that property constitutes the "property of another" when someone holds the right to possess it as against the defendant at the time of the taking. In order to reach this conclusion, *Sheldon* canvassed the relevant statutes defining the rights of the respective parties in the property at the time of the taking and assessed with whom rightful possession of the property lay—an analysis consistent with the common-law approach discussed previously. See, e.g., *Zinke,* 76 NY2d at 10-14.[13]

---

[13] A similar comparison-of-rights approach can be found in Michigan caselaw addressing whether, for purposes of armed robbery, the defendant engaged in "a felonious taking of property from the victim's presence or person." See *People v Rodgers,* 248 Mich App 702, 707-708; 645 NW2d 294 (2001) (finding an illegal taking where the defendant did not argue he had the right to possess "when compared to [the victims']" right to possess); see also *People v Jones,* 71 Mich App 270, 272; 246 NW2d 381 (1976) (noting that the victim had the right to handle the property taken at the time of the taking); *People v Beebe,* 70 Mich App 154, 159; 245 NW2d 547 (1976) (finding that the victim had a right to possess the goods taken as against the defendant); *People v Needham,* 8 Mich App 679, 685; 155 NW2d 267 (1967) (same).

In summary, while this Court has not yet had specific occasion to expressly define "property of another" for purposes of the larceny statutes, our caselaw reflects the common-law definition described above: "property of another" is any property in which "another" individual holds the right to possess as against the defendant at the time of the taking. To determine whether "another" had such rightful possession, courts must examine the respective rights to the property. This examination requires courts to determine both the rights of all relevant individuals to the property and whether any of those individuals held a right to possess the property as against the defendant. To undertake this examination, courts should consult pertinent statutes, ordinances, contracts, caselaw, and the like that give rise to the individuals' rights and define the relationship between those rights, as the statutes did in *Sheldon*.

#### IV. APPLICATION

To apply these rules in the instant case, we must determine the parties' respective interests in the property during the redemption period. As demonstrated, for defendant to have properly been charged with larceny, the facts must demonstrate that defendant, in removing the fixtures, took the "property of another." And for the fixtures to have been the "property of another," someone other than defendant—in this case, Hamood—must have held the right to possess the property to the exclusion of defendant at the time of the taking. Hamood could hold such an interest only from his purchase at the foreclosure sale. In our judgment, no possessory rights inhered in Hamood as a result of the sale. Defendant, on the other hand, retained the exclusive possessory rights in the fixtures

during the redemption period. It therefore follows that defendant could not commit larceny under the circumstances of this case.

## A. RESPECTIVE RIGHTS

In order to ascertain the parties' rights to possession, it is first necessary to briefly define possession. "Possession" is defined as " '1. [t]he fact of having or holding property in one's power; the exercise of dominion over property. 2. [t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object.' " *People v Flick*, 487 Mich 1, 12; 790 NW2d 295 (2010), quoting *Black's Law Dictionary* (7th ed).[14] In general, "possession is either actual or constructive." *Id.* at 14. " '[A] person has constructive possession if he "knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . ." ' " *Id.*, quoting *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989) (citation omitted). "[B]are access" to the property "is not enough to constitute possession" for purposes of larceny offenses. *People v Gill*, 12 Mich App 383, 386; 163 NW2d 14 (1968). See also *People v Manning*, 38 Mich App 662, 666-667; 197 NW2d 152 (1972) (noting that possession

---

[14] Our reliance on this general definition of "possession" here should not be taken to suggest that in order to have rightful possession for purposes of larceny a party must have the right to possess the property to the complete exclusion of any and every other party. Indeed, multiple individuals can hold possessory rights in the same property at the same time, as do, for example, partners and joint tenants. See LaFave, § 19.4(c), p 85. Rather, as discussed earlier, the relevant inquiry in the larceny context is whether the party from whom the property was taken had, at the time of the taking, the right to possess it as against the defendant.

requires the defendant to have been given dominion over the property, not simply custody).

Turning to the present case, the parties do not dispute that the items taken were fixtures subject to the foreclosed-on mortgage. Fixtures intentionally annexed to real property "bec[o]me part of the mortgage security, and, upon foreclosure sale, title [to them] passe[s] with the realty." *Sequist v Fabiano*, 274 Mich 643, 646; 265 NW 488 (1936). Thus, whatever rights the complainant had in the fixtures arose from his purchase.

A foreclosure-sale purchaser receives a deed at purchase, which vests title at the end of the redemption period if the mortgagor fails to redeem. The deed is described in MCL 600.3236 as follows:

> Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall *thereupon become operative*, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter, except as to any parcel or parcels which may have been redeemed and canceled, as hereinafter provided; and the record thereof shall thereafter, for all purposes be deemed a valid record of said deed without being re-recorded, but no person having any valid subsisting lien upon the mortgaged premises, or any part thereof, created before the lien of such mortgage took effect, shall be prejudiced by any such sale, nor shall his rights or interests be in any way affected thereby. [Emphasis added.]

Following the sale, the mortgagor has a period of time during which to redeem the property by paying the amount of the successful bid, interest on that amount, and various fees. MCL 600.3240(1) and (2). If the property is not redeemed within that period—six months in this case, MCL 600.3240(8)—the title to the

deed becomes "operative" and vests in the purchaser
under MCL 600.3236. The vesting confers on the pur-
chaser "those rights that existed at the time that the
mortgage subject to foreclosure was executed," *In re
Receivership of 11910 South Francis Rd*, 492 Mich 208,
223; 821 NW2d 503 (2012), as well as those the mort-
gagor held "at any time thereafter," MCL 600.3236. In
other words, the purchaser has "the right to have the
estate which he purchased . . . ." *Stout v Keyes*, 2 Doug
184, 187 (1845); see also *Sanford v Cahoon*, 63 Mich
223, 226; 29 NW 840 (1886) ("If redemption was not
made . . . the title of the purchaser became absolute,
and related back to the time of sale."); see also *Stout*, 2
Doug at 187-188 ("[I]f not defeated by redemption, [title]
related back to the time of the purchase . . . ."). This is
understandably known as the "relation-back" doctrine.
*Wells Fargo Bank v Country Place Condo Ass'n*, 304
Mich App 582, 593; 848 NW2d 425 (2014). Because in
these circumstances the purchaser is deemed to hold
title retroactively, he can pursue civil actions for dam-
ages done to the property during the redemption period.
MCL 600.3278; *Stout*, 2 Doug at 187-188.

The purchaser's rights during the redemption period
have been variously described as an inchoate or con-
tingent equitable interest, but it has never been sug-
gested that this interest constitutes a possessory right,
let alone one that permits the purchaser to exclude the
mortgagor from possession. This Court has held that
the purchaser acquires "an inchoate right to the land,"
subject to defeat by redemption. *Stout*, 2 Doug at 187.
The purchaser's right to absolute title is "consum-
mated" only if the premises go unredeemed. *Id*. During
the redemption period, the deed "was in the nature of
an escrow; and, if not defeated by redemption, related
back to the time of the purchase . . . ." *Id*. at 187-188.
More recent cases summarily label the purchaser's

interest as "equitable." As we explained in *Dunitz v Woodford Apartments Co*, 236 Mich 45, 49; 209 NW 809 (1926):

> A foreclosure of a mortgage extinguishes it. When the amount due under the mortgage is paid to the mortgagee by the purchaser at the sheriff's sale, the lien is destroyed, and the purchaser becomes the owner of an equitable interest in the mortgaged premises which ripens into a legal title if not defeated by redemption as provided by law. It is not a "lien, incumbrance or mortgage" which the purchaser at a foreclosure sale acquires, but it is an interest or title, equitable in character, and with nothing to be done on his part to make it absolute if it is not redeemed within the period of time prescribed by law.

This represents the prevailing characterization of the purchaser's interest. See, e.g., *In re Receivership of 11910 South Francis Rd*, 492 Mich at 223. Thus, only after the mortgagor fails to redeem does the purchaser's interest "ripen[] into a legal title[.]" *Dunitz*, 236 Mich at 49.

During the pendency of the redemption period, the purchaser's rights and responsibilities are considerably circumscribed, with the purchaser entitled to few, if any, of the rights accompanying ownership. Most relevantly for purposes of larceny, the purchaser lacks *possessory* rights, which continue in the mortgagor until the period expires. As early as 1936, we remarked upon "the definite and continuous policy of this State to save to mortgagors the possession and benefits of the mortgaged premises, as against the mortgagees, until expiration of the period of redemption." *Mass Mut Life Ins Co v Sutton*, 278 Mich 457, 461; 270 NW 748 (1936).[15]

---

[15] This policy proceeded from an 1843 statute, 1843 PA 62, "inhibiting the action of ejectment [by the mortgagee] until after a foreclosure of the

Our most recent discussion of the purchaser's rights took place in *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653; 575 NW2d 745 (1998), in which a real-estate agent showing foreclosed property during the redemption period was injured in a fall at the property and brought a premises liability action against the foreclosure-sale purchaser. *Id.* at 655-658. Because an action for premises liability is conditioned on the defendant's possession and control of the land, we examined whether the purchaser had possession:

> [T]he bank [which purchased the property] had no legal right of possession during the six-month redemption period. It is certainly true . . . that the Hineses, as mortgagors, had the authority to place the mortgagee-bank in possession of the premises. However, we have consistently given careful scrutiny to any transaction in which a mortgagor waives its statutory right of redemption. [*Id.* at 660.]

---

mortgage, and the expiration of the time of redemption . . . ." *Mundy v Monroe*, 1 Mich 68, 70 (1848). That statute currently is codified at MCL 600.2932(2), which states that "[n]o action may be maintained [for ejectment] by a mortgagee, his assigns, or representatives for recovery of the mortgaged premises, until the title to the mortgaged premises has become absolute." We have consistently interpreted the statute as providing that a "mortgage gives no right of possession until foreclosure and sale" and expiration of the redemption period. *Hogsett v Ellis*, 17 Mich 351, 363 (1868). See, e.g., *Nusbaum v Shapero*, 249 Mich 252, 257; 228 NW 785 (1930) ("The law is well settled in this State that, as a rule, a mortgagee may not divest the mortgagor of possession of mortgaged premises until the title thereto shall have become absolute upon foreclosure of the mortgage."); *Hazeltine v Granger*, 44 Mich 503, 505; 7 NW 74 (1880) (noting that the 1843 law was to "prevent the mortgagee from obtaining under his mortgage any interest beyond that of a security to be enforced only by sale on foreclosure, and to debar him from any right of possession"); *Wagar v Stone*, 36 Mich 364, 367 (1877) ("[U]ntil the title [in the foreclosure-sale purchaser] shall have become absolute upon a foreclosure of the mortgage . . . the mortgagor has a clear right to the possession and to the income which he may derive therefrom . . . .").

Instead, we reaffirmed the " 'definite and continuous policy' " of ensuring the mortgagor's possession during the redemption period. *Id.* at 660, quoting *Sutton*, 278 Mich at 461. Consequently, "a mortgagee can obtain possession" during that period, "but only for consideration . . . and pursuant to an explicit agreement." *Id.* at 661 (citations omitted). We concluded:

> The fact that the bank was the high bidder at foreclosure proceedings did not grant it any rights of ownership or possession, but, rather, gave the bank a contingency interest in the property with respect to title ownership. Accordingly, any interest the bank had would not vest until after expiration of the redemption period. [*Id.*]

Similarly, the statutory framework addressing the purchaser's rights during the redemption period supports the conclusion that purchasers lack possessory rights. The Legislature has crafted a limited set of rights purchasers may enjoy during the redemption period; none of these suggests that the Legislature intended to grant the purchaser possessory rights. Following the sale, the purchaser can conduct inspections of the property only by complying with the numerous provisions in MCL 600.3237 and MCL 600.3238.[16] For example, the purchaser may only inspect the inside of the property once, unless there is evidence that the property is being damaged. MCL 600.3238(4). A formal series of steps must be taken before the purchaser can begin summary proceedings under MCL 600.5701 *et seq.* for immediate possession of the premises. MCL 600.3238(5) through (11). These provisions each severely constrain any rights the purchaser might have to possess or even access the property.

---

[16] These sections were enacted following the events in this case, 2014 PA 125, but they seem to confirm what is made manifest in the prior caselaw: purchasers *lack* immediate possessory rights.

These authorities compellingly indicate that the foreclosure-sale purchaser has no possessory interest in the property during the redemption period, while the mortgagor retains possessory rights. To the extent that rights or responsibilities inhere in the purchaser as a result of events during that period, these arise only retroactively under the relation-back doctrine. That doctrine, however, does not invest the purchaser with possessory rights or with any other interests during the period itself. At that time, the purchaser holds no possessory rights on which the mortgagor could trespass. Indeed, courts applying our precedent have found that it is the *purchaser* who could, in fact, commit a trespass against the mortgagor during the redemption period. See, e.g., *Kaczmarek v JPMorgan Chase, NA*, opinion of the United States District Court for the Eastern District of Michigan, issued June 11, 2012 (Case No. 2:11-CV-15214), pp 5-7. In short, the purchaser lacks possessory rights and the mortgagor enjoys possessory rights during the redemption period.

### B. RESOLUTION

The above analysis leads to the conclusion that defendant here could not have committed larceny of the fixtures because he had the right to possess the house, and thus also its fixtures, at the time of the alleged larceny. Larceny can occur only when personal "property of another" has been taken by trespass. To constitute "property of another," the "goods, when taken, must be either actually or constructively in the possession of another[.]" Robinson, p 107. Moreover, the person with possession must have the right to possess the property to the exclusion of the defendant. *Long*, 50 Mich at 251; *Sheldon*, 208 Mich App at 334-336. It follows that one in

"lawful possession" of the property cannot take by trespass the "property of another."

This means that for defendant to have committed larceny, Hamood must have held a right to possess the property to the exclusion of defendant. But Hamood did not hold such a right. As the foreclosure-sale purchaser, he held equitable title to the property during the redemption period, which gave him no possessory rights. *Dunitz*, 236 Mich at 49. Defendant, by contrast, held legal title and, critically for our purposes, the sole right to possess the property. *Kubczak*, 456 Mich at 660-661. Therefore, defendant could not by taking the property have trespassed upon the "property of another," because no one else had the right to possess it at that time. Consequently, defendant's actions did not constitute a trespassory taking of the "property of another" and did not constitute larceny under MCL 750.360. And because the property was not stolen, defendant did not receive, possess, or conceal stolen goods. MCL 750.535(4)(a). Accordingly, we must reverse the Court of Appeals and reinstate the trial court's dismissal of the charges against defendant because he cannot be guilty of offenses under either MCL 750.360 or MCL 750.535(4)(a).[17]

### V. COURT OF APPEALS

In reaching a contrary conclusion, the Court of Appeals, we believe, erred in two respects: (a) it focused on Hamood's purported right to consent rather than on his

---

[17] The Minnesota Supreme Court, in a case involving facts very similar to the instant case, observed in dictum that "provisions of the criminal code, such as theft ... or criminal damage to property ... provide no criminal recourse since during the redemption period a mortgagor has exclusive right to possession of and title to the property." *State v Zacher*, 504 NW2d 468, 472-473 (Minn, 1993).

possessory rights; and (b) its analysis of that right to consent—to the extent such analysis tracks the proper inquiry into possessory rights—was mistaken.

The Court of Appeals' threshold error was in assuming that Hamood was the "owner" of the fixtures for purposes of larceny—and thus that the fixtures constituted the "property of another" with respect to defendant—by virtue of Hamood's supposed "right to consent" to their removal, rather than by examining his specific possessory rights. This use of "consent" as the basis for ascertaining Hamood's interests for purposes of larceny is inapt because it fails to address *why* Hamood enjoyed the right, or the authority, to consent or to deny consent for a particular taking. That is, an individual is not considered to "own" property *because* he or she may consent to its taking; rather, particular interests *encompass* the right to consent. Consent is an attribute or function of some property interests, derived from a right to control the property, which in turn is an attribute or function of the right to possession of the property. Hence, "consent" is an amorphous and imprecise concept except to the extent that it serves as a proxy for the actual right to possession.

Furthermore, to the extent that the court's analysis of consent was intended to serve as a proxy for the right to possession, it is unpersuasive because neither of the sources of legal authority on which the court relied gives rise to the right to possession. The first source relied on by the Court of Appeals was MCL 600.3278. However, this statute fails to endow the purchaser with a possessory right, let alone a possessory right that permits the purchaser to dispossess the mortgagor. Rather, the statute provides the purchaser with a civil remedy if the mortgagor damages the property during the redemption period:

> During the period of redemption following a foreclosure sale of property under this chapter, the mortgagor and any other person liable on the mortgage is liable to the purchaser at the sale, or the mortgagee, payee, or other holder of the obligation secured by the mortgage if the mortgagee, payee, or other holder takes or has taken title to the property at the sale either directly or indirectly, for any physical injury to the property beyond wear and tear resulting from the normal use of the property if the physical injury is caused by or at the direction of the mortgagor or other person liable on the mortgage. [MCL 600.3278(1).]

Nowhere does this statute purport to create a right to possession. Indeed, the statute itself indicates to the contrary, providing that "[a]n action for damages under this section may be joined with an action for possession of the premises under [MCL 600.5701 *et seq.*]." MCL 600.3278(5). The "action for possession" refers to summary proceedings for obtaining judgments of possession and includes situations in which the person in possession "causes extensive and continuing physical injury to the premises[.]" MCL 600.5714(1)(d). This action thus *complements* an action for possession, but does not *give rise* to a right to possession. Nor indeed does the statute purport even to prohibit damage to, or removal of property from, the premises. Rather, it purports only to provide a civil remedy or recourse to a purchaser *when* such damage occurs. The statute does not grant possessory rights in the property as a predicate for larceny.

The second source relied on by the Court of Appeals was the equitable title held by Hamood as a result of the foreclosure sale. This also does not suffice to grant him the possessory rights necessary to establish larceny. As discussed earlier, the Court of Appeals did not analyze in any depth the limited nature of the equitable title derived from the sale, which clearly

cabins the scope of the title and authority belonging to the foreclosure purchaser during the redemption period.

The prosecutor now offers an additional reason why the court below reached the correct result based on Hamood's equitable title. Relying on the relation-back doctrine, the prosecutor claims that because this title related back to the foreclosure-sale date, defendant "at the very least" trespassed on Hamood's constructive possession, if not also on his actual possession, "since the redemption option was never [in the end] exercised." In support of this proposition, the prosecutor cites *Wells Fargo Bank*, 304 Mich App at 590-594, in which a foreclosure-sale purchaser was held liable for condominium fees and assessments accruing from the purchase date.

But *Wells Fargo* in particular, and the relation-back doctrine in general, are inapposite. Regarding *Wells Fargo*, that decision turned on the Condominium Act, MCL 559.101 *et seq.*, which specifically provided that the foreclosure-sale purchaser was not liable for condominium assessments " *'that became due prior to the acquisition of title to the [property] by that . . .* purchaser.' " *Wells Fargo*, 304 Mich App at 590-591, quoting MCL 559.158. The Court thus held that the purchaser was responsible for dues accruing after he acquired title. This occurred when the purchaser took the equitable title, as the Act did not require the acquisition of "absolute title." *Id.* at 592-593. Although the Court noted that the relation-back doctrine also supported its analysis, it expressly stated, "Our analysis of the [Act] is not reliant upon the relation-back doctrine." *Id.* at 593.

Moreover, the doctrine cannot reasonably afford a basis for finding larceny here because it is premised

on retroactivity; the doctrine does not afford the purchaser any possessory rights *during* the redemption period. Larceny, by contrast, is concerned with the redemption period itself as it actually elapses: the taking cannot be merely "retroactively criminal," but must be criminal at the time it occurs. See *Anderson*, 7 Mich App at 517, citing *People v Bradovich*, 305 Mich 329, 332; 9 NW2d 650 (1943); see also Saltzman, pp 543-544 ("Ordinarily the taking . . . must coincide with the intent to steal. Thus, if the taking was lawful, a later conversion with the intent to steal might be larceny by conversion [MCL 750.362] or embezzlement, but it would not be larceny."). It follows that only the circumstances at the time of the taking are relevant for assessing criminal liability, not those arising afterwards.

Further, this Court has held that the relation-back doctrine is "remedial, and its use in the law is to prevent wrongs and punish trespasses. . . . As has been repeatedly declared in this court, it can never be so applied as to make that a wrong which was innocent when done . . . ." *Flint & PM R Co v Gordon*, 41 Mich 420, 431; 2 NW 648 (1879). Thus, it cannot be used as proposed here because to do so would render the mortgagor's actions "wrong" only on the basis of subsequent circumstances, imposing criminal liability on actions that when they took place were not criminal.[18]

---

[18] The prosecutor also argues that defendant's right to possess the property during the redemption period does not entail a right to remove or dispose of fixtures attached to the property. Citing *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 57; 602 NW2d 215 (1999), the prosecutor contends that "property" rights are represented by a " 'bundle of sticks' " including rights of possession, enjoyment, and disposition. The right to possess is thus distinct from the right to remove or dispose, and defendant's rights did not include the latter. This fails to persuade for two reasons. First, the prosecutor presents no support for the proposition that the mortgagor who retains legal title

Thus, even with the prosecutor's elaborations, the Court of Appeals erred because there is no support for holding that the foreclosure sale purchaser's equitable title combined with MCL 600.3278(1) to confer upon the purchaser a possessory interest in the property as against that of the mortgagor. The Court simply failed to explain how the coexistence of Hamood's equitable interest, one that is non-possessory, with a statutory remedy provision that is also non-possessory, results in a possessory right to the fixtures at the time of the taking.

### VI. CONCLUSION

The outcome in this case is mandated by MCL 750.360's adoption of the common law of larceny, which protects possessory rights. At the time defendant removed the fixtures, only he held possessory rights in these, and the complainant held no such rights. Accordingly, defendant could not have committed larceny by removing the fixtures. Absent a proper larceny charge, the fixtures were necessarily not "stolen" goods. Therefore, the charge of receiving or possessing stolen goods must fail as well. For these reasons, we reverse the Court of Appeals judgment

and the right to possess has somehow lost the right to remove or dispose. Second, even if defendant lacked such rights, removal or disposal would still not constitute larceny because it would not constitute a trespass upon Hamood's interest. It does not follow from defendant's supposed lack of right to remove or dispose that Hamood has somehow obtained possessory rights on which defendant has trespassed. We also reject the prosecutor's argument that "defendant trespassed on Hamood's future interest in the fixtures by removing them from the house." Larceny protects present possessory rights, and the relevant inquiry is therefore not which possessory rights, Hamood might come to enjoy in the future, but which possessory rights, if any, he held at the time of the alleged taking.

and reinstate the trial court's dismissal of the criminal charges against defendant.[19]

YOUNG, C.J., and ZAHRA, MCCORMACK, VIVIANO, BERNSTEIN, and LARSEN, JJ., concurred with MARKMAN, J.

---

[19] Our resolution of this case makes it unnecessary to address the second issue on which oral argument was heard: "whether fixtures taken from real property may be the subject of larceny under MCL 750.356(1)." *March*, 497 Mich at 1041.