*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

IKHLAS YACOUB YONO,

        Defendant-Appellant.

UNPUBLISHED
December 10, 2020

No. 347399
Wayne Circuit Court
LC No. 18-005872-01-FH

Before: LETICA, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant, Ikhlas Yacoub Yono, appeals her jury conviction of larceny from the person, MCL 750.357. Yono was sentenced to three months' nonreporting probation. We affirm.

## I. BACKGROUND

This matter stems from Yono being arrested during a "sting" operation that was conducted by the Michigan State Police at the MGM Grand Casino in Detroit, Michigan. On March 14, 2017, one of the detectives involved in the sting operation obtained a "ticket in-ticket out" ("TITO"), which bore a face value of $100, from the casino's security department.[1] Sergeant Kelly Baines inserted the TITO into a slot machine. Sergeant Baines then turned her back to the machine and concentrated on her cell phone. At some point during the sting operation, Yono walked by, noticed the TITO "hanging out of the machine," and removed the TITO from the machine. As Yono started to walk away, members of law enforcement arrested her and escorted her to the security department, where she was interviewed. During the interview, Yono admitted that she had taken the TITO, that she did not have permission to take the TITO, and that she took the TITO with the intention of "cashing it in."

---

[1] A TITO "is the casino's version of cash," and a TITO holds credit for the amount of money that is not played by the patron.

Yono was charged with larceny from the person and larceny in a building, MCL 750.360. At trial, members of law enforcement and a member of the casino's security department testified for the prosecution, and security footage was introduced into evidence. Yono testified in her own defense, indicating that she believed that the TITO had been abandoned despite the fact that she noticed Sergeant Baines sitting in close proximity to the TITO. Yono was convicted as charged. However, the prosecutor moved to dismiss the larceny from a building conviction, and the trial court granted the motion. Yono was sentenced as described above. Yono later moved for a new trial and for a *Ginther*[2] hearing. After holding a *Ginther* hearing, the trial court concluded that trial counsel was not ineffective and denied Yono's motion for a new trial. This appeal followed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Yono argues that the larceny from the person conviction must be vacated because it was not supported by sufficient evidence. We disagree.

"Questions of statutory interpretation and issues relating to the sufficiency of the evidence are reviewed de novo." *People v Thorne*, 322 Mich App 340, 344; 912 NW2d 560 (2017). When ascertaining whether sufficient evidence was presented at trial to support a conviction, "this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted). "Conflicting evidence and disputed facts are to be resolved by the trier of fact." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).

Yono argues that she could not be convicted of larceny from the person because Sergeant Baines did not own the TITO and because the casino cannot be considered a "person" under MCL 750.357. The resolution of this argument depends on the proper interpretation of MCL 750.357, which provides that "[a]ny person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony[.]" In *People v March*, 499 Mich 389, 399; 886 NW2d 396 (2016), our Supreme Court observed that there is "no statutory definition of larceny [in Michigan], and all our statutes use it in its common law sense." (quotation marks and citation omitted). The *March* Court further observed the following:

> This Court has relied on that common law to establish the general elements of simple larceny: "[A]t common law simple larceny was defined as 'the felonious taking, and carrying away, of the personal goods of another.' " *People v Randolph*, 466 Mich 532, 542-543; 648 NW2d 164 (2002), quoting 4 Blackstone, Commentaries on the Laws of England, p 229. We have also described larceny as the "unlawful taking of the personal property of another with the felonious intent to deprive the owner of it." *People v Johnson*, 81 Mich 573, 576; 45 NW 1119 (1890).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

These articulations of the common law can be parsed in turn into the following elements: (a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property. [*March*, 499 Mich at 401 (footnotes omitted).]

To these elements, MCL 750.357 adds one additional element: that the property be taken "from the person of another." In *People v Smith-Anthony*, 494 Mich 669, 681; 837 NW2d 415 (2013), our Supreme Court defined the phrase "from the person of another" to mean "from the possession and immediate presence of the victim." Our Supreme Court stated that for the property to be in the victim's immediate presence, there must be no intervening space between the object and the victim:

[T]he immediate presence test can only be satisfied if the property was in immediate proximity to the victim at the time of the taking. In other words, the common-law meaning of "immediate presence" in the larceny-from-the-person context is consistent with the plain meaning of the word "immediate," which means "having no object or space intervening, nearest or next." [*Id*. at 688 (citation omitted).]

The dispute in this case centers on whether the TITO ticket that Yono took constituted the "property of another." Contrary to Yono's argument on appeal, "possession, and not title ownership, is the determinative requirement in larceny crimes." *March*, 499 Mich at 409. As held by our Supreme Court in *March*,

"property of another" is any property in which "another" individual holds the right to possess as against the defendant at the time of the taking. To determine whether "another" had such rightful possession, courts must examine the respective rights to the property. This examination requires courts to determine both the rights of all relevant individuals to the property and whether any of those individuals held a right to possess the property as against the defendant.

* * *

"Possession" is defined as " '1. [t]he fact of having or holding property in one's power; the exercise of dominion over property. 2. [t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object.' " *People v Flick*, 487 Mich 1, 12; 790 NW2d 295 (2010), quoting *Black's Law Dictionary* (7th ed). In general, "possession is either actual or constructive." *Id*. at 14. " '[A] person has constructive possession if he "knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . ." ' " *Id*., quoting *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989) (citation omitted). "[B]are access" to the property "is not enough to constitute possession" for purposes of larceny offenses. *People v Gill*, 12 Mich App 383, 386; 163 NW2d 14 (1968). See also *People v Manning*, 38 Mich App 662, 666-667; 197 NW2d 152 (1972) (noting that possession requires

the defendant to have been given dominion over the property, not simply custody). [*March*, 499 Mich at 414-416.]

In this case, the casino provided law enforcement with the TITO so that law enforcement could conduct the sting operation. Sergeant Baines inserted the TITO into the slot machine and remained in the presence of the ticket at all relevant times. Specifically, Sergeant Baines estimated that she was only a few inches away from the TITO and testified that she was in "close, close proximity to the ticket." It was undisputed at trial that Yono did not have a right to possess the TITO. Indeed, Sergeant Marcus Wise testified that, when Yono was interviewed, she admitted that she did not have permission to take the TITO and that she should not have taken it. A rational trier of fact could have concluded that, when taken, Sergeant Baines "held a right to possess the property as against" Yono. See *id*.

Although Yono argues on appeal that the TITO did not have value, MCL 750.357 does not contemplate the value of the property. See *People v Perkins*, 473 Mich 626, 634-635; 703 NW2d 448 (2005). Furthermore, Yono's argument is unsupported by the evidence. According to Sergeant Wise, a TITO "is the casino's version of cash" and "is treated as currency." Sergeant Wise further testified that the ticket was worth $100 and noted that the value was clearly marked on the TITO. Sergeant Baines provided consistent testimony. Accordingly, viewing the evidence in a light most favorable to the prosecution, the evidence presented at trial was sufficient to establish beyond a reasonable doubt that Yono committed the crime of larceny from the person.[3]

## B. ASSISTANCE OF COUNSEL

Next, Yono argues that she is entitled to a new trial because her trial counsel provided ineffective assistance for multiple reasons, each of which we will address below.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation marks and citation omitted). "The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *Id*. (citations omitted). A finding is clearly erroneous if this Court is "left with a definite and firm conviction that the trial court made a mistake." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

To prevail on a claim of ineffective assistance of counsel, a litigant "must establish (1) the performance of his [or her] counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of

---

[3] We conclude that Yono's arguments that counsel was ineffective for failing to ask Sergeant Baines if she owned the TITO and whether the TITO could be "redeemed for cash" are without merit. Indeed, Sergeant Baines did not need to own the TITO, and the TITO did not have to hold a specific value in order for Yono to be convicted of larceny from the person. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

## 1. PRETRIAL PROCEEDINGS

### a. FAILURE TO FILE MOTION TO DISMISS BASED ON ENTRAPMENT

Yono first argues that her trial counsel was ineffective for failing to move for dismissal based on the defense of entrapment. Whether entrapment has occurred is a question of law for the court to decide. *People v Fyda*, 288 Mich App 446, 456; 793 NW2d 712 (2010). "Entrapment is not a defense that negates an essential element of the charged crime. Instead, it presents facts that are collateral to the crime and that justify barring the defendant's prosecution." *People v Jones*, 203 Mich App 384, 386; 513 NW2d 175 (1994). Thus, "[t]he defendant's guilt or innocence is irrelevant." *People v Forrest*, 159 Mich App 329, 334; 406 NW2d 290 (1987) (quotation marks and citation omitted).

"Michigan courts use the objective test of entrapment. The objective test focuses on the propriety of the government's conduct that resulted in the charges against the defendant rather than on the defendant's predisposition to commit the crime." *People v Hampton*, 237 Mich App 143, 156; 603 NW2d 270 (1999) (citations omitted).

> Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it. [*People v Vansickle*, 303 Mich App 111, 115; 842 NW2d 289 (2013) (quotation marks and citations omitted).]

The mere furnishing of an opportunity to commit a crime is not entrapment, and there is no entrapment if police do not become involved with an informant until after the criminal transaction is complete. *People v Akhmedov*, 297 Mich App 745, 752, 754; 825 NW2d 688 (2012).

In this case, Sergeant Baines placed the $100 TITO into a slot machine, sat down, turned her back to the machine, and concentrated on her cell phone. Although other members of law enforcement conducted surveillance, members of law enforcement did not interact with Yono in any way whatsoever before she chose to remove the TITO from the slot machine. Rather, by Yono's own admission, she saw the TITO still in the machine and saw a woman sitting next to the machine, seemingly distracted by her cell phone. Without any police urging, Yono decided to take a TITO that she knew did not belong to her, which is not consistent with law-abiding behavior. Indeed, Sergeant Baines's testimony at trial supported that not all casino patrons would take the TITO during sting operations. Indeed, some patrons would get Sergeant Baines's attention and warn her that her TITO was in danger of being stolen. In sum, law enforcement merely provided Yono with an opportunity to commit a crime, which is insufficient to establish entrapment. Because Yono cannot establish that she had a valid defense of entrapment, Yono has failed to establish that trial counsel was ineffective in this regard. See *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008) ("It is well established that defense counsel is not ineffective for failing to pursue a futile motion.").

b. FAILURE TO FILE MOTION TO DISMISS BASED ON DOUBLE JEOPARDY

Next, Yono argues that trial counsel was ineffective for failing to seek dismissal of one of the two larceny charges on the basis of double jeopardy. Both the United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15. "These guarantees are substantially identical and should be similarly construed." *People v Conley*, 270 Mich App 301, 311; 715 NW2d 377 (2006). They protect a defendant from both multiple prosecutions and multiple punishments for the same offense. *People v Gibbs*, 299 Mich App 473, 488-489; 830 NW2d 821 (2013).

In *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007), our Supreme Court held that the "same elements" test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), is "the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15." "The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense. If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved." *People v Baker*, 288 Mich App 378, 382; 792 NW2d 420 (2010) (citations omitted).

In this case, the larceny from the person charge required proof that Yono stole property from "the person of another," MCL 750.357, while the larceny in a building charge required proof that the theft was committed in a building, MCL 750.360. Each offense therefore requires proof of an element that is not present in the other offense. Hence, there was no double jeopardy violation, and trial counsel was not ineffective for failing to raise such a futile claim. See *Brown*, 279 Mich App at 142.

Nonetheless, Yono argues that this Court's decision in *People v Williams*, 323 Mich App 202; 916 NW2d 647 (2018), rev'd in part 504 Mich 892 (2019), supports her argument. In *Williams*, the defendant stole a ticket from "the deck of a slot machine" while a decoy police officer "sat with her back to the ticket about a foot away from the machine while she played on her cell phone." *Id*. at 204. The defendant was convicted of larceny from the person and larceny from a building. *Id*. The defendant appealed. *Id*. After oral argument, this Court directed the parties to brief the issue of "whether, under the circumstances of th[e] case, the convictions for larceny from the person . . . and larceny in a building . . . are inconsistent such that one of the two convictions must be vacated." *Id*. at 208 (quotation marks and citation omitted). Applying the doctrine of "mutually exclusive convictions," this Court concluded "that a larceny may be 'from a person' or 'in a building,' but not both at the same time." *Id*. at 211. This Court reasoned:

> The fact that the victim of a larceny from the person is in a building at the time of the larceny is not sufficient to convict of larceny in a building. Therefore, although a defendant may be charged with these offenses in the alternative with regard to the same larceny, he or she may not be convicted of both. [*Id*.]

This Court affirmed the conviction of larceny from the person, but vacated the conviction of larceny in a building. *Id*. However, our Supreme Court subsequently reversed this Court's decision "related to mutually exclusive convictions" and reinstated the defendant's conviction of

larceny in a building. *People v Williams*, 504 Mich 892, 892; 928 NW2d 700 (2019). Our Supreme Court held as follows:

> In this case, the jury was instructed that to convict the defendant of larceny from a person, it must find that the defendant took the property from the victim's person or immediate presence. However, with respect to the larceny in a building conviction, the jury was *not* instructed that it must find that the property was *not* taken from the victim's person or immediate presence. Since, with respect to the larceny in a building conviction, the jury never found that the property was not taken from the victim's person or immediate presence, a guilty verdict for that offense was not mutually exclusive to the defendant's guilty verdict for larceny from a person, where the jury affirmatively found that the property was taken from the victim's person or immediate presence . . . . Accordingly, the Court of Appeals erred by relying on the principle of mutually exclusive verdicts to vacate the defendant's larceny in a building conviction. [*Id*. (citations omitted).]

Yono fails to address the fact that *Williams* concerns mutually exclusive verdicts, as opposed to double jeopardy. Instead, Yono appears to argue that trial counsel was ineffective for failing to raise this Court's decision in *Williams* in response to the prosecutor's offer to dismiss the larceny from the person charge in exchange for Yono pleading guilty to larceny from a building. That is, in Yono's view, trial counsel should have argued that the plea offer was illusory because, under this Court's decision in *Williams*, Yono could not have been convicted of both larceny charges so the offer to dismiss one of the charges was meaningless. However, as the prosecutor points out, in *People v Gardner*, 482 Mich 41, 69; 753 NW2d 78 (2008), our Supreme Court stated:

> When an attorney fails to raise "an objection that would have been supported by a decision which subsequently was overruled," a defendant cannot show that he was prejudiced within the meaning of *Strickland* [*v United States*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)].

Accordingly, Yono cannot establish that trial counsel was ineffective in this regard. See *id*.

### c. FAILURE TO FILE MOTION TO QUASH

Yono argues that trial counsel was ineffective for failing to file a motion to quash. According to Yono, insufficient evidence was presented at the preliminary examination to support a bindover on the charge of larceny from the person. However, we need not review whether counsel was ineffective for failing to challenge the bindover decision. As discussed earlier in this opinion, the record reveals that sufficient evidence was presented at trial to support the conviction. Therefore, any error in the bindover decision was rendered harmless. *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). Moreover, to the extent that we have considered Yono's argument, we find that it lacks merit.

## 2.  COUNSEL'S PERFORMANCE AT TRIAL

### a.  TRIAL COUNSEL'S OPENING STATEMENT

Yono argues that trial counsel was ineffective because, as a result of counsel's failure to review the security footage before trial, he made statements in his opening remarks to the jury that were later proved to be untrue.  Specifically, Yono argues that, if counsel had viewed the footage before trial, he would not have claimed in his opening statement that it took "at least twenty minutes" for the police to walk Yono through the casino to the interview room.  Yono speculates that this "false" statement somehow undermined counsel's credibility with the jury to such an extent that the jurors would not have believed anything else he said.  We disagree.

The record evidence supports that trial counsel viewed the surveillance footage before trial. Indeed, Yono acknowledged that she had viewed the footage with trial counsel, and trial counsel testified at the *Ginther* hearing that he had viewed the footage twice before trial.  Trial counsel also testified that, when he "saw the video [he] wasn't sure whether or not that was the complete video of the entire trip."  He noted that Yono had informed him that it took 20 minutes to get to the interview room once she was arrested.  Because trial counsel believed Yono, counsel indicated during opening statement that the "trip" took "at least" 20 minutes.

Although counsel's argument was inaccurate, the length of time that it took for Yono and members of law enforcement to walk to the interview room was not an imperative fact for the jury to consider and decide.  Additionally, there is no indication in the record that the jury would have questioned the veracity of everything that trial counsel said as a result of one misstatement.  The misstatement was brief, and the trial court instructed the jury that counsel's arguments were not evidence and that the arguments were "only meant to help [jurors] understand how each side view[ed] the case."  Jurors are presumed to follow their instructions, *People v Bass*, 317 Mich App 241, 263; 893 NW2d 140 (2016), and this Court has held that a trial court's instruction that counsel's statements are not evidence is sufficient to cure any misstatements in an opening statement, *People v Johnson*, 315 Mich App 162, 201; 889 NW2d 513 (2016).  Thus, there is no indication of prejudice, let alone any indication that the outcome of the trial would have been different if trial counsel had correctly stated in his opening statement that it took less than five minutes for law enforcement to escort Yono to the interview room.

### b.  TRIAL COUNSEL'S LACK OF TRIAL STRATEGY

Yono next argues that trial counsel was ineffective because he failed to employ a reasonable trial strategy.  In so arguing, however, Yono fails to cite relevant case law and to explain or rationalize what a reasonable trial strategy would have been given the facts of this case. Consequently, because Yono's claim is abandoned, we need not consider it.  See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

### c.  ADMONISHMENT OF TRIAL COUNSEL BY THE TRIAL COURT

Yono next argues that trial counsel was ineffective because counsel had to be admonished by the trial court for interrupting and for asking improper questions during trial.  However, Yono fails to explain or rationalize how the trial court admonishing trial counsel resulted in ineffective assistance that prejudiced her.  As already stated, Yono admitted that she took a TITO that did not

belong to her and that she intended to cash in the ticket. Moreover, review of the record reveals that the trial court also admonished the prosecutor for interrupting and for making inappropriate arguments during closing argument. The trial court also instructed the jury that the court's "comments, rulings, questions and instructions [were] not evidence" and that the jury was the only judge of the facts. Jurors are presumed to follow their instructions. *Bass*, 317 Mich App at 263. Consequently, we conclude that Yono has failed to establish ineffective assistance of counsel in this regard.

### d. FAILURE TO MOVE FOR A DIRECTED VERDICT

Yono argues that trial counsel was ineffective for failing to move for a directed verdict where the prosecution presented insufficient evidence on the larceny from the person charge. However, for the reasons already discussed, we conclude that the prosecution presented sufficient evidence in its case-in-chief to support Yono's conviction for larceny from the person. See *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). Consequently, trial counsel did not provide ineffective assistance by failing to file a futile motion for a directed verdict. See *Brown*, 279 Mich App at 142.

### e. FAILURE TO REQUEST CERTAIN JURY INSTRUCTIONS

Next, Yono argues that trial counsel was ineffective for failing to request a jury instruction on the definition of "ownership." Specifically, Yono argues that trial counsel should have requested that the trial court read M Crim JI 22.2, which provides as follows:

> "Owner" in this case means the actual owner of the property [or any other person whose consent was necessary before the property could be taken].

According to Yono, because there is no evidence that Sergeant Baines was the "actual owner" of the TITO, Yono would have been acquitted had the jury been read M Crim JI 22.2. In so arguing, however, Yono disregards that M Crim JI 22.2 also defines "owner" as "any other person whose consent was necessary before the property could be taken." As discussed in detail earlier in this opinion, "possession, and not title ownership, is the determinative requirement in larceny crimes." *March*, 499 Mich at 409. " '[P]roperty of another' is any property in which 'another' individual holds the right to possess as against the defendant at the time of the taking." *Id*. at 414. See also *Thorne*, 322 Mich App at 344. Trial counsel was not ineffective for failing to request an incomplete jury instruction.[4] See *Brown*, 279 Mich App at 142.

Yono also argues that trial counsel "should have insisted that larceny in a building be considered as a lesser-included charge of larceny from a person, not a separate available charge when the jury was instructed, and on the jury verdict form." In so arguing, however, Yono fails

---

[4] The jury was instructed that it could not convict Yono of larceny from the person unless it found that Yono had taken "someone else's property" and that, at the time the property was taken, Yono "intended to permanently deprive the owner of the property."

to cite relevant legal authority to support her position. Therefore, the argument is abandoned. See *Harris*, 261 Mich App at 50.

### f. FAILURE TO PURSUE CLAIM OF JUROR MISCONDUCT

Yono argues that trial counsel was ineffective because he "failed to argue that the jury committed misconduct by deliberating and discussing the case before all the evidence was presented and the jury charged." However, we conclude that Yono waived any claim of error in this regard.

As explained in *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), "[w]aiver has been defined as the intentional relinquishment or abandonment of a known right" (quotation marks and citations omitted). Waiver "differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citations omitted).

In November 2018, Yono wrote a letter to the trial court, stating that while she was waiting to go back into the courtroom after the lunch break on the first day of trial, she heard two men whom she recognized as jurors "discussing [her] case." Yono indicated that she only heard two things clearly: "sting operation" and "[$]100.00." According to Yono, her trial counsel told her "not to worry about" it and refused to report it to the trial court.

Sentencing was scheduled for November 28, 2018. On that date, the trial court noted the letter and asked if Yono was still concerned about the matters referenced in the letter. After Yono indicated that she was still concerned, the trial court appointed Yono new counsel. Sentencing was rescheduled. On November 30, 2018, which was the subsequent scheduled sentencing date, Yono's new attorney informed the trial court that Yono "[was] electing to be sentenced." However, Yono indicated upon questioning by the trial court that she wanted additional time to decide what to do. The sentencing was rescheduled for a second time. On December 3, 2018, Yono's new attorney stated that Yono had been informed that, if she pursued her claim of juror misconduct and a new trial was granted, "it might not prove a different outcome" and that "it would just delay putting this behind her." Based on this, Yono's new attorney indicated that Yono wished to be sentenced. The trial court then stated as follows:

> Well, let, let me ask this. So she had raised the issue with me that she thought maybe the jury had acted improperly and, also, some dispute with her attorney. Does she wish to retract those request[s] for that or does she want the Court to hold a hearing with regard to both her concerns about the jury and, also, her concerns about her attorney?

Yono's new attorney indicated that Yono was "retracting those statements[.]" When asked by the trial court if counsel's representation was correct, Yono responded "Yes, sir." Yono confirmed that she did not "need any more time to make th[e] decision[.]" The sentencing proceedings then commenced.

We conclude that Yono, who had been appointed new counsel, advised of the possible outcomes, and had been provided with sufficient time to consider whether she wished to pursue

certain post-conviction relief, agreed that she wished to "retract" her statements and proceed to sentencing. Because Yono unequivocally indicated through her new counsel and through her own statements that she wanted to retract her statements regarding juror misconduct, Yono waived any right to claim error in this regard. Because any error was extinguished by Yono's waiver, we need not analyze her ineffective assistance of counsel claim with respect to the alleged juror misconduct.

In sum, in light of this record, we cannot conclude that the trial court clearly erred by finding that counsel's performance did not fall "below an objective standard of reasonableness under prevailing professional norms." See *Sabin (On Second Remand)*, 242 Mich App at 659. Furthermore, with regard to the prejudice prong, the record does not support Yono's argument that the result of the proceeding would have been different had trial counsel not made the alleged errors in the pretrial proceedings and during trial. In light of this evidence, we conclude that the trial court did not err in ruling that Yono received effective assistance of counsel.

Affirmed.


/s/ Anica Letica
/s/ Michael J. Riordan
/s/ Thomas C. Cameron