*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GARY LEE STROUSE,

        Defendant-Appellant.

UNPUBLISHED
May 12, 2026
10:58 AM

No. 371784
Montcalm Circuit Court
LC No. 2023-030811-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of larceny of a firearm, MCL 750.357b; larceny from a vehicle under $1,000, MCL 750.356a(2)(b)(1); larceny from a vehicle under $200, MCL 750.356(2)(a); and attempted larceny from a vehicle under $200, MCL 750.356(2)(a). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to: (1) 46 to 180 months' imprisonment for his conviction of larceny of a firearm; (2) 206 days in jail for his conviction of larceny from a vehicle under $1,000; (3) 93 days in jail for his conviction of larceny from a vehicle under $200; and (4) 93 days in jail for his conviction of attempted larceny from a vehicle under $200. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues there was insufficient evidence to support his conviction of larceny of a firearm.

## A. STANDARDS OF REVIEW

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "In examining the sufficiency of the evidence, 'this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012), quoting *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

-1-

"Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

## B. ANALYSIS

Evidence is sufficient for a guilty verdict when " 'a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Defendant only challenges his conviction of larceny of a firearm. MCL 750.357b states: "A person who commits larceny by stealing the firearm of another person is guilty of a felony, punishable by imprisonment for not more than 5 years or by a fine of not more than $2,500.00, or both." The elements of larceny are: "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016). Accordingly, the elements to secure a conviction of larceny of a firearm are: (1) a trespassory taking; (2) and carrying away; (3) of a firearm; (4) of another; and (5) with the intent to steal. *Id*.; MCL 750.357b.

Defendant's only argument is that there was insufficient evidence to establish that he had the intent to steal the firearm from the owner's truck. A review of the record establishes that there was sufficient evidence to support a finding defendant engaged in a trespassory taking and carrying away of the owner's firearm. The business owner explained that his tow yard was closed when defendant entered, and he never gave defendant permission to enter. While the tow-truck drivers operated 24 hours a day, the office was only open from 9:00 a.m. to 4:00 p.m. The only individuals allowed in the yard when the office was closed were the drivers picking up or delivering vehicles. Defendant also admitted he hopped the fence to get inside the yard. Defendant likewise admitted that he found the gun in the center console of the owner's pickup truck and moved it, establishing that he carried it away at some point during his search of the truck.

With respect to defendant's argument that there was no evidence establishing that he had the necessary intent because there was no evidence connecting the gun to him, and he testified he had no intent to steal the firearm, his argument ignores his own admissions. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622. Defendant admitted to

the officers and reaffirmed in his testimony that he entered the tow yard with the intent to steal items for money. While defendant stated he was interested in obtaining money for gasoline, he was arrested carrying keys, a gift card, and the registration to the owner's pickup truck. Defendant's testimony and admissions to the officers established he had the intent to steal from the beginning of this endeavor. While defendant consistently denied he planned to steal the firearm, he ignores the officer's testimony demonstrating defendant informed one of them that he planned on stealing the gun.

Minimal circumstantial evidence is required to establish intent, and, defendant admitted he planned on stealing from the tow yard. It was not unreasonable for the jury to believe defendant also planned to steal the firearm, because he admitted his goal was theft. See *Hardiman*, 466 Mich at 428. Defendant also disclosed to an officer he planned on stealing the firearm. While defendant denied planning to steal the gun at trial, the jury weighed his testimony with the evidence and determined it was not credible. See *Kanaan*, 278 Mich App at 619. Accordingly, there was sufficient evidence to support defendant's conviction of larceny of a firearm.

## II. PROSECUTORIAL ERROR

### A. STANDARD OF REVIEW

Defendant also argues the prosecutor engaged in misconduct.[1] We review this issue de novo. *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010).

### B. ANALYSIS

Defendant argues that the prosecutor erred when he: (1) badgered defendant on cross-examination regarding his knowledge of larceny; (2) attempted to discuss defendant's experience with larceny charges; and (3) mischaracterized defendant's testimony.

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. at 63. "A defendant's opportunity for a fair trial can be

---

[1] "Although we recognize that the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, we agree that the term 'misconduct' is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Defendant's challenges here are assertions of prosecutorial error.

jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64.

## 1. BADGERING

Defendant argues the prosecutor badgered him on cross-examination by: (1) attempting to contest defendant's explanation for the presence of the gun in the truck bed and (2) asking the same questions regarding defendant's knowledge of larcenies. "Cross-examination is a critical method of testing a witness's credibility and exposing weakness in a witness's account. And it is appropriate that cross-examiners be afforded wide latitude to do their job." *People v Evans*, 335 Mich App 76, 90; 966 NW2d 402 (2020).

> One of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness. [*Id*. (quotation marks and citation omitted).]

Prosecutors are free to argue all evidence and reasonable inferences as it relates to their case. *Unger*, 278 Mich App at 236.

With respect to the first assertion of badgering, defendant testified he never intended to steal the owner's gun from the pickup truck, but the gun, which was stored in the center console, was found in the bed of the pickup truck where defendant was located. On direct examination, defendant testified he moved the gun because he did not want to possess it if police arrived. Defendant also testified he entered the tow yard to steal items so he could make money, which he affirmed on cross-examination.

On cross-examination, the prosecution inquired about why defendant moved the gun rather than leaving it in the central console. Defendant explained that he was still "rummaging around" in the vehicle, and moved the gun because he did not want to have a gun involved if the police arrived. Defendant claimed he placed the gun in the back of the truck when he first entered, but the prosecutor noted defendant was inside the lot for about 45 minutes, and defendant could not answer why it took him 45 minutes to search the pickup truck. Defendant provided two reasons why he moved the gun, but his time frame for the theft and movement of the gun did not make sense. The prosecutor's questions sought to clarify defendant's position by asking him why he initially moved the gun.

A review of the exchange between defendant and the prosecutor demonstrates that the prosecutor inquired about defendant's version of events, attempting to "draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify or explain the testimony of the witness on direct examination." *Evans*, 335 Mich App at 90 (quotation marks and citation omitted). The prosecutor's questions were relevant to defendant's testimony on direct examination and sought to call into question defendant's version of events. It was neither badgering nor prosecutorial error to do so.

With respect to defendant's second claim, defendant objected to the prosecutor repeating the question concerning defendant's knowledge of larcenies. The exchange started with the prosecutor inquiring about how it was convenient that the gun was located in the same place defendant was found by police. Defendant disagreed and asserted he did not attempt to "ditch" the gun, expressing his belief that "stealing is stealing," and maintained the position there was no difference in the charged larcenies. The prosecutor questioned defendant about his knowledge of larcenies, asking defendant if he thought there was a difference between stealing a petty item, like a gift certificate, and a firearm. Defendant reiterated his belief but later agreed that while he was unaware of the specific laws, there was a difference in larcenies.

The prosecutor asked defendant multiple times if he was aware of the difference between stealing a small item, like a $20 gift certificate, and a gun. Defendant's answers were nonresponsive at times, and he expressed his belief "stealing is stealing," rather than answer the prosecutor's questions. However, at the end of the exchange, defendant acknowledged there were different laws for different thefts. While the prosecution may have asked defendant the same question multiple times, defendant's answers were nonresponsive and contained questions by defendant. Notably, defendant's testimony on direct examination demonstrated that he believed the presence of the gun raised the stakes of his theft, which was why it was moved. On cross-examination, defendant contradicted himself by testifying that there would be no difference if he stole the firearm. The prosecutor was permitted to cross-examine defendant as he did on this issue. *Evans*, 335 Mich App at 90. The prosecutor's questions were relevant to defendant's claim on direct examination, evidenced by the prosecutor's questions about the time frame, location, and reason for leaving the gun. As such, there was no error.

## 2. CRIMINAL HISTORY

Defendant argues that the prosecutor erred when he inquired whether defendant had experience with theft laws, arguing the prosecutor's question appeared to discuss defendant's old convictions in violation of MRE 609(a).

Although the trial court never ruled on the admissibility of defendant's previous conviction of armed robbery for purposes of impeachment, defendant argues that his previous conviction was more than 10 years before the charged offense, precluding it under MRE 609(a). However, the prosecutor never moved to admit the prior conviction and did not inquire into that previous conviction.

A review of the exchange demonstrates the prosecution inquired about defendant's experience with larcenies, as defendant testified that he was unaware of the difference in larcenies and maintained his belief that all stealing was the same. The prosecutor asked if defendant was aware of different types of larcenies, which defendant claimed he was not. The prosecutor then asked if defendant had experience with larcenies. Defense counsel objected to the line of questions, claiming it came close to discussing "things we're not supposed to be talking about." The trial court disagreed, noting defendant expressed his belief that stealing is stealing, and the prosecution could explore that issue.

As the trial court noted, the prosecutor never inquired about defendant's previous convictions. While the prosecutor's inquiries may have hinted at defendant's criminal history,

there was no mention of a conviction or crime in the questions. The prosecutor asked defendant if he was aware of the differences in larcenies, which defendant claimed he was not. The prosecutor asked whether or not defendant had *experience* with larcenies in response to defendant's claim he was ignorant on the issue. Defendant never answered the question, and after defense counsel's objection, the prosecutor did not discuss the issue again. Through its questioning, the prosecutor attempted to determine whether defendant had any experience on the issue after defendant testified he was unaware of the differences in the charged larcenies. There was no testimony concerning defendant's previous conviction, and MRE 609(a) was not violated by the prosecutor's questions. See *People v Snyder*, 301 Mich App 99, 105; 835 NW2d 608 (2013). ("MRE 609 permits the admission of evidence of some prior convictions, but for a specific and narrowly defined purpose: impeachment of a witness's credibility."). As such, the prosecutor did not err.

### 3. MISCHARACTERIZATION

Last, defendant argues the prosecutor mischaracterized his testimony, arguing that the prosecutor asserted that defendant was aware stealing a gun was a more serious crime than stealing other items. "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).

Defendant cites two instances where he believes his testimony was mischaracterized. The first occurred when the prosecutor asked defendant why the jury should believe that he did not intend to steal the firearm despite admitting to being in the tow yard to steal items for money. The second instance concerns the prosecutor's questions about defendant moving the gun. The prosecutor asked if defendant moved the gun, and defendant responded: "But did I steal it?" The prosecutor asserted he believed defendant stole the gun and placed it in the bed of the pickup truck because it was a gun. The prosecutor stated: "What you just said to this jury is why, 'I was afraid that if a cop came up on me, they would—this could be taken a lot more seriously than the other things.' Isn't that what you told us? Yes, it is." Defendant initially stated that he could not recall his testimony but later appeared to agree with the prosecutor's description of his testimony. During direct examination, defendant explained he moved the gun "because knowing my luck, that if a cop or somebody sees me with it in the admission [sic] of a crime, I didn't want nothing to do with that."

Defendant is correct that he never explicitly stated that he thought the firearm caused the situation to be more serious, but his testimony was vague and incomplete. Defendant appeared to acknowledge being caught with the gun while stealing changed the circumstances of his crime but never finished his thought. While the prosecutor cannot mischaracterize evidence, he is able to make reasonable inferences from the evidence. *Watson*, 245 Mich App at 588. In this instance, defendant testified he was aware that being seen with a gun while stealing was something he did not want, but never explained why or how he came to hold that belief. While defendant may not have expressly stated he believed the gun made the situation more serious, it was reasonable to infer defendant was aware that the presence of the gun created a different situation on the basis of his testimony on direct examination. Defendant claimed he did not want to be caught with the gun because he was afraid of being shot. It was reasonable for the prosecutor to infer from defendant's

testimony that defendant believed the gun changed the circumstances of his crime and raised the stakes. As such, the prosecutor did not mischaracterize defendant's testimony.

Even if the prosecutor did mischaracterize defendant's testimony, the trial court offered two curative instructions on the issue. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citation omitted). After defense counsel's objection, the trial court instructed the jury to rely on its collective memory of defendant's testimony and to ignore the statements and questions of the prosecutor that were not supported by evidence. The jury was instructed to focus on defendant's testimony and determined defendant believed the gun's presence had significance. The jury was properly instructed, which was sufficient to remedy any error. *Id*. at 235. Consequently, the prosecutor did not err.

## III. DISPROPORTIONATE SENTENCE

Defendant's final argument is that his sentence was disproportionate.

### A. STANDARD OF REVIEW

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality, which requires that the sentence be proportional to the seriousness of the circumstances surrounding the offense and offender." *People v Lowery*, 258 Mich App 167, 172; 673 NW2d 107 (2003).

### B. ANALYSIS

"[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (opinion by BOLDEN, J.).[2] "A sentence that adheres to the guidelines' recommended range is reviewed for proportionality." *Id*. at 352. "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Id*. at 360. " 'In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate.' " *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021), quoting *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). " 'Unusual' means 'uncommon, not usual, rare.' " *People v Ventour*, 349 Mich App 417, 430; 27 NW3d 660 (2023), quoting *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992).

"The principles that guide proportional sentencing in our state are: '(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence

---

[2] While *Posey* was a plurality opinion that is not technically binding, this Court held "it [is] prudent to follow the holding in the interest of judicial economy." *People v Purdle (On Remand)*, 350 Mich App 446, 454; 32 NW3d 479 (2024).

of others from committing like offenses.' " *People v Bennett*, 335 Mich App 409, 418; 966 NW2d 768 (2021), quoting *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). "The trial court may consider all the record evidence when sentencing, including the contents of a presentence investigation report." *People v Armstrong*, 305 Mich App 230, 245; 851 NW2d 856 (2014).

Defendant's minimum-sentence guidelines for his conviction of larceny of a firearm were 9 to 46 months. The trial court sentenced defendant to 46 to 180 months' imprisonment, making his sentence within the guidelines and presumptively proportional. *Posey*, 512 Mich at 360. Defendant argues his sentence was disproportional because it: (1) failed to account for mitigating factors; (2) failed to considered defendant's rehabilitation; and (3) was at the top end of the minimum-sentencing guidelines.

Defendant states the trial court failed to consider mitigating factors, such as his drug addiction or difficult childhood. However, the trial court had access to defendant's PSIR, which contained his personal history and experience with drug abuse. Further, defendant fails to explain how drug abuse and a difficult childhood were unique factors that would render his proportional sentence disproportionate.

With respect to defendant's argument that the trial court failed to consider the possibility for rehabilitation, the trial court did discuss defendant's multiple parole violations spanning almost 10 years, and that defendant received leniency for many parole violations despite his history. The record showed that defendant participated in multiple programs to help him recover from his drug abuse while imprisoned and on parole, but continued to commit violations and other crimes while on parole. The trial court reviewed defendant's criminal history and behavior while on parole and determined that defendant lacked the potential for rehabilitation. Defendant's assertions to the contrary are incorrect.

Last, defendant argues he did not deserve a sentence at the top of the guidelines. Defendant cites the plea offer he rejected, which indicated he would serve a 22-month sentence, and the PSIR recommending 36 months' imprisonment as evidence his sentence was unreasonably harsh. "A sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial." *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011). "However, a defendant's sentence is not necessarily unconstitutional when it is higher following a trial than had he taken a plea." *Ventour*, 349 Mich App at 431. Defendant provides no evidence or argument why the sentence in the plea offer, which defendant rejected, renders his sentence disproportionate. The trial court properly considered the testimony at trial and the information in defendant's PSIR when rendering defendant's sentence.

While the trial court did not directly address the *Snow* factors, it considered the severity of the crime, noting it concerned a stolen firearm which would have been in the community had the police not encountered defendant. The trial court determined that a sentence at the top end of the guidelines was appropriate given the presence of a gun, defendant's previous conviction of armed robbery, and defendant's failure to comply with his parole, which revealed his lack of rehabilitative potential. "[T]he key test of proportionality is not whether the sentence departs from or adheres to the recommended range, but whether it reflects the seriousness of the matter." *People v Lemons*, 454 Mich 234, 260; 562 NW2d 447 (1997) (quotation marks and citation omitted). Defendant has

failed to rebut the presumption that his within-guidelines sentence was proportional. *Burkett*, 337 Mich App at 637.

       Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick
